335 F.2d 70
 PAN AMERICAN WORLD AIRWAYS, INCORPORATED, and The Travelers
Insurance Company, Appellees,
v.
Stephen O'HEARNE, Deputy Commissioner, Fifth Compensation
District, U.S.Department of Labor, Bureau of
Employees' Compensation, Appellant.
 No. 9340.
 United States Court of Appeals Fourth Circuit.
 Argued June 12, 1964.
Decided July 13, 1964.
 
 Leavenworth Colby, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice and Claude V. Spratley, Jr., U.S. Atty., on brief), for appellant.
 John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellees.
 Before BRYAN and BELL, Circuit Judges, and CRAVEN, District Judge.
 PER CURIAM.
 
 
 1
 An award under the Defense Bases Act, 42 U.S.C. 1651-1654, was made by the Deputy Commissioner to the widow and orphans of Robert M. Smith, an employee of Pan American World Airways, Inc., for his death on San Salvador (Watling) Island in the Bahamas, a British West Indies possession where Columbus first raised land. The fatality resulted when a jeep overturned in which the decedent was riding as a passenger with other employees for recreation. He had been hired by PAA as a powerhouse operator in its performance of a Government contract for the maintenance of Atlantic range facilities in connection with the United States Air Force Missile Test Center at Cape Kennedy, Florida.
 
 
 2
 Robert Smith's home and family were in Galax, Virginia, about 1000 miles distant. Pursuant to his engagement he was provided sleeping quarters and meals at the power station. Work occupied 8 hours each day but for any emergency he was subject to call during off-time. Tracking equipment was situated throughout San Salvador.
 
 
 3
 Aside from its remoteness, the island embraced only about 42 square miles-- 5 miles by 13 miles in its greatest dimensions. The population consisted of approximately 800 natives. British official personnel added another 50 individuals. The only settlement, Cockburn Town, was about three miles from Smith's dormitory.
 
 
 4
 Where Robert Smith was quartered PAA furnished the employees a pool room, an outdoor picture theatre, row boats, baseball and softball equipment. Of course, the ocean and beach provided swimming, fishing and boating opportunities. Additionally, the Reef Club was maintained there at which alcoholic beverages could be purchased, and reading and card playing enjoyed. The employer supplied no transportation for the workers to leave the site. Taxis were available, and on occasion upon request use of a jeep would be allowed by PAA for recreational trips.
 
 
 5
 On April 24, 1958, when Robert Smith had completed his regular assignment for the day, he went to the Reef Club, soon after 4 o'clock P.M. Except for time at dinner or supper, he remained there with three other co-employees drinking beer or champagne.
 
 
 6
 Around 7:30 P.M. they drove in one of PAA's jeeps-- whether with the tolerance of the employer is not clear-- to a native pub in Cockburn Town, known as 'Evelyn's' or the 'Blue Marlin Club.' Here they obtained another beer, returning to the jeep in about fifteen minutes. As they approached the base, the vehicle overturned from excessive speed or due to a defect in the road. Smith and another employee, Gondeck, were killed Neither of them was the driver; intoxication was not ascribed as a factor in their deaths. The entire excursion occupied no more than a half hour.
 
 
 7
 The Commissioner concluded that the death of Robert M. Smith arose out of and in the course of his employment. Considering the distant place of employment, the sparsity of population and limited area of the island, the Commissioner determined that the group, including the present decedent, were justified in looking for recreation beyond the confines of their habitat. In the circumstances of his employment-residence, the Commissioner thought, Smith was only 'doing what he (might) reasonably be expected to do.' In short, that his brief exit was 'an incident of the service'.
 
 
 8
 PAA and its insurance carrier, The Travelers Insurance Company, successfully petitioned the District Court to vacate this conclusion and the award as not vindicated by the proof. The Commissioner appeals. Although some of the factual ascertainments made by the Commissioner may be without full support, we think substantial evidence undergirds his crucial and determinative fact findings. To these he applied correct and apt principles of law. Together they dictate the award.
 
 
 9
 Like the Commissioner, we see decision here designed and patterned in O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951). Sustaining, too, is Self v. Hanson, 305 F.2d 699 (9 Cir. 1962). The death of Smith's companion, Gondeck, was the subject of United States v. Pan American World Airways, Inc., 299 F.2d 74 (5 Cir. 1962), refusing an award. If the evidence there adduced was of the same factual content as that offered here, we would deferentially disagree with the outcome.
 
 
 10
 Upon the findings, conclusions and reasons stated by the Commissioner, we believe his award should be reinstated.
 
 
 11
 Reversed.